**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LINDA JANE HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-694-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION**

Plaintiff Linda Hoskins seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 8].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[1] Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Richard Kallsnick was held on April 22, 2008. [R. 273]. By decision dated May 19, 2008, the ALJ entered the findings that are the subject of this appeal. [R. 17]. The Appeals Council denied plaintiff's request for review on September 26, 2008. [R. 6]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was born on August 9, 1963, and was 44 years old on the date of the hearing before the ALJ. [R.281]. Plaintiff has a high school degree, which included special education classes. [R. 281]. She has twice married and divorced and is the mother of a daughter and son, ages 21 and 25. [R. 264, 281]. Plaintiff is unmarried and unemployed. She is financially dependent on a man that she resides with, along with his three teenage children. [R. 264]. She is estranged from her son, and has a turbulent relationship with her daughter. Plaintiff raised her granddaughter until her daughter took custody when the child was two years old. [R. 264]. Plaintiff has a ten year work history, employed in general labor with 23 different companies, including: Mars Pet Care (1995-1998); various temporary services (1998-1999); American Maid (1999); Barker Rest Home (1999); Cherokee County Health Care (1999); Blue Dolphin Grand Lake (1999); Harmon Property Management (2000); Viergever Enterprises (2001); Taco Mayo (2001); Choo Chew Deli (2001); Simmons Foods (2001-2003); Gravette Medical Center Hospital (2003); Tyson Chicken (2003-2004); Stonebrook Inn (2004); Healthcare Services (2004); Scissortail Food Services (2004-2005); Peak Medical (2004); DSI Security (2005); Ozark Candy Company (2005); and Jay Public Schools

(2005). [R. 49-52]. In 1995, plaintiff injured her right knee while working on a production line in a dog food plant where she sacked feed. In 1998, she had two arthroscopic surgical procedures on her right knee and received worker's compensation benefits for the injury. [R. 165, 196, 199]. She alleges a history of depression and anxiety and has taken Xanax and Hydrocodone for 25 years to treat the symptoms. [R. 258].

In her application, plaintiff alleged impairments involving problems with memory, legs, knees, schizophrenia and arthritis. [R. 76, 282]. Agency physicians found impairments involving osteoarthritis and allied disorders [R. 187], and affective mood disorders. [R163].

In assessing plaintiff's qualification for disability benefits and supplemental income, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since August 1, 2004, the alleged disability onset date, and that plaintiff met the insured status requirements through March 31, 2010. [R. 19]. At step two, the ALJ determined plaintiff's severe impairments to be degenerative joint disease of the knees, generalized anxiety disorder, and major depression disorder, moderate, without psychosis. [R. 19]. The ALJ found that although plaintiff's anxiety disorder and affective disorders are severe, she takes medications for the symptoms, and they do not impose work-related limitations. [R. 20]. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 19]. The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work with occasional limitations on her capacity for climbing and kneeling. [R. 19]. At step four, the ALJ found that plaintiff was able to perform her past relevant work as poultry deboner and security guard. [R. 22]. Alternatively, at step five, the ALJ found that plaintiff was able to perform other work that existed in significant numbers in the national economy.

[R. 23]. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act. [R. 23]. These findings were the fourth and fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

To determine the types of available work plaintiff could perform in the national economy, the ALJ relied on the Grid and the testimony of a vocational expert. [R. 23]. The ALJ concluded that plaintiff could perform such light exertion occupations as mail clerk, laundry presser, messenger/office, cashier, food order clerk, and various newspaper jobs. [R. 23].

## Issues

Plaintiff raises two issues on appeal.

1. Whether the ALJ propounded an improper hypothetical to the vocational expert.
2. Whether the ALJ failed to perform a proper credibility determination.

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

the time of her alleged disability. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

As her first assignment of error, plaintiff contends the ALJ propounded an improper hypothetical to the vocational expert. The ALJ's hypothetical was as follows:

> Hypothetical 44 year old, female, who has a twelfth grade education. . . . Good ability to read, write, and use numbers. This individual would be able to perform light and sedentary work activities. She would be able to occasionally lift and or carry up to 20 pounds, frequently lift and or carry up to ten pounds. Stand and/or walk with normal breaks for up to six hours in an eight-hour workday, sit with normal breaks for up to six hours in an eight-hour workday, use her hands for hand controls, feet for foot controls. She is going to [be] limited as far as postural limitations to occasional climbing. That would mean climbing of ramps or stairs, or ladders or scaffolding, that type of thing. That would be occasional. And also kneeling would be occasional. All other requirements as to postural would be on a frequent basis. Okay. Manipulative limitations none. Visual limitations none. Communicative limitations none. Environmental limitations none. Now she is diagnosed with anxiety related disorder, as well as affective disorder. She's currently taking medications for those. And even though they are severe, there are no work-related limitations that I'm going to assess in this hypothetical. She is afflicted with symptomatology from a variety of sources to include mild to moderate to occasional chronic pain that would be of sufficient severity to be noticeable to her, but nonetheless she can remain attentive and responsive in a work setting and carry out work assignments satisfactorily. She does take medication for the relief of her symptomatology, with the appropriate use of the medication [it] would not preclude her from remaining reasonably alert to perform required functions presented in the work setting. Assuming this hypothetical, could she return to any her past relevant work, either as she describes that work or as its customarily performed?

[R. 305-07]. Based on the hypothetical, the vocational expert opined that plaintiff would be able to

return to her past work as a poultry deboner and security guard since they are both light sedentary work, and the restriction given in the hypothetical would not affect her capacity to work those jobs. [R. 306].

The ALJ relied on the same hypothetical to address step five, and requested the vocational expert's opinion as to plaintiff's ability to perform light sedentary unskilled work. The vocational expert provided the jobs listed above. [R. 306].

Plaintiff contends the ALJ's hypothetical was improper because he found at step two that plaintiff's anxiety and depression were severe impairments, but never explained how these severe mental impairments could yield no work related limitations. [Dkt. # 17 at 2]. Plaintiff also contends that the ALJ never explained how her severe mental impairments at step 2 could simply disappear without impacting his findings at steps 4 and 5 of the sequential evaluation process.

As shown above, the ALJ included plaintiff's severe anxiety and related disorders in his hypothetical. He asked the vocational expert to consider that her mental condition was not a work limiting factor assessing that her symptoms could be controlled through "appropriate use of the medication." In his words the ALJ first acknowledged that plaintiff was diagnosed "with anxiety related disorder, as well as affective disorder" and that "she's currently taking medications for those." He explained, "And even though they are severe, there are no work-related limitations that I'm going to assess in this hypothetical." The ALJ explained his reason, "She is afflicted with symptomatology from a variety of sources ... She does take medication for the relief of her symptomatology, with the appropriate use of the medication [it] would not preclude her from remaining reasonably alert to perform required functions presented in the work setting." [R. 305-06]. Plaintiff relies on <u>Hargis v. Sullivan</u>, 945 F.2d 1482 (10th Cir. 1991) claiming the ALJ's

hypothetical was not precise. In <u>Hargis</u> the court held, "Testimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." <u>Id.</u> at 492.  Plaintiff's reliance on <u>Hargis</u> is misplaced.  Unlike the instant case, in <u>Hargis</u>, the ALJ did not include claimant's depression in his hypothetical to allow the vocational expert to consider the combined affects of the claimant's back pain and depression. As shown above, the ALJ in the instant case, did include plaintiff's mental impairment in his hypothetical but he minimized the impact of her mental disorder by concluding that it would not be job limiting with "appropriate use of the medication."  Thus, the Court finds no merit in plaintiff's argument.

Plaintiff next challenges the ALJ's determination in his written decision, at step 3, that plaintiff's mental impairment does not meet or medically equal the criteria of listing 12.04 or 12.06 to preclude substantial gainful activity.  [Dkt. # 17 at 3-4].  The Court construes this argument as claiming the ALJ's hypothetical was improper because the administrative record does not support his conclusion that plaintiff's severe mental impairments would not preclude work.  In his decision the ALJ entered the following findings:

> In activities of daily living, the claimant has no restriction from her mental impairment.
>
> In social functioning, the claimant has mild difficulties.
>
> With regard to concentration, persistence or pace, the claimant has experienced no episodes of decompensation.

[R. 20].  The evidence of record cited by the ALJ to support this conclusion follows.

> The claimant's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously-mentioned restrictions.

> In terms of claimant's alleged depression and anxiety, she [sic] medical reports do not indicate that she has actively sought mental health counseling. Records concerning alleged mental health treatment that were to be produced by the claimant's representative did not appear in the stated post-hearing time period. But even those records were described as covering the claimant's recent stated treatment at Grand Lake Mental Health. They would not have been informative about the claimant's mental health status over the requisite 12 month period necessary for a severe impairment.
>
> Ms. Hopkins mentioned shopping trips which necessarily involve considerable standing and walking.
>
> In sum, the above residual functional capacity assessment is supported by a state residual functional capacity assessment and by the claimant's testimony.

[R. 21, 22]. The ALJ relied on the mental RFC assessment by agency physician David Dean, M.D. In his Mental Status Examination dated February 23, 2006, Dr. Dean made the following observations regarding plaintiff's mental health:

> She denies her anxiety or depression would have prevented her from being gainfully employed. . . . She was seen by her family physician in Gravette, Arkansas, and prescribed the drug alprazolam 0.5 mg to be used as needed for her anxiety. She states that her anxiety has been aided by the use of this drug. She has not been on an antidepressant. She has never been hospitalized for any psychiatric condition. . .
>
> This lady is able to manage matters of self-care and personal hygiene as well as matters of household responsibility. She is able to complete household responsibility in a timely manner. She does have a few friends and is involved socially. She is able to accomplish matters of self-care and household responsibility even when depressed.
>
> . . . .
>
> Ms. Hoskins is neat in personal appearance and acceptably groomed. Her speech is spontaneous and goal-oriented. There is no loosening

> of the associated thought process noted. No auditory or visual hallucinations are noted and no delusional thinking has been noted. . . . She is oriented in all spheres and memory for immediate, recent and remote events is entirely intact. This lady is able to concentrate easily and her fund of information is commensurate with the attainment of a portion of a secondary school education. She is of average intelligence. Her judgment and insight are intact. . .

[R. 163]. Plaintiff faults the ALJ for failing to consider that plaintiff held numerous jobs for short periods of time. Plaintiff claims this is indicative of her inability to engage in substantial gainful activity and is evidence of her deterioration or decompensation. Although plaintiff's work history may be considered in determining plaintiff's capacity to work, such factor alone is not controlling. As previously mentioned, it is the role of the Court, in reviewing a decision of the ALJ, to determine whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. Thus, the Court finds that the ALJ relied on substantial evidence in the administrative record in formulating his hypothetical question to the vocation expert, and accordingly, the hypothetical question was not improper.

As her second assignment of error, plaintiff contends the ALJ failed to perform a proper credibility determination. [Dkt. # 17 at 4]. First, plaintiff claims that although the ALJ cited some of plaintiff's testimony, he failed to distinguish which statements he accepted as true from those that he discounted. In failing to do so, plaintiff claims that the ALJ's credibility determination was "nothing more than a conclusion in the guise of findings." [Dkt.# 17 at 4]. The Court disagrees.

In <u>Kepler v. Chater</u>, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must

refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. The ALJ set forth the specific evidence he relied upon:

> At the hearing, the claimant said her depression was severe. She had become suspicious of people, even those who came to visit her. Her anxiety made her sensitive to every noise and she was "set off" easily when around people. Also, she believed her blood pressure initiated her headaches which developed into migraines. The muscle spasms in her calves happened without her doing anything and they limited her ability to walk. Ms. Hoskins alleged that her right knee was continuing to deteriorate. Because of it, she was unable to squat or even bend her leg.
>
> The claimant said she spent approximately half the day sitting with her legs elevated. Throughout a day, she was able to stand or sit for no more than an hour at a time. Standing is harder for her than walking. Her pain interrupts her sleep and she begins some days both very fatigued and very depressed. On some days, she alleged, she feels too depressed to leave home.

[R. 21]. The ALJ linked his findings to specific evidence in the record, as shown below:

> Ms. Hoskins began receiving injections for her right knee degenerative joint disease in June 2004. When these proved inadequate, she underwent two arthroscopic surgical procedures. After these, she alleged her knee pain became too intense for her to continue her job as a poultry line worker. Despite her impairment, she remained able to complete household chores in a timely manner.
>
> . . . .
>
> Regarding the degenerative joint disease, the record does not support the degree of impairment claimed by Ms. Hoskins. In a consultative evaluation by Matt West, M.D. on March 11, 2006, her right knee displayed a full range of motion. There was no swelling and the ligaments were stable. Ms. Hoskins did not complain of pain or exhibit any sign of discomfort when Dr. Matt struck a supposedly sensitive patellar area with a reflex hammer (Exhibit 3F, p. 2). Further, a state medical consultant observed the claimant having a normal gait without the use of an assistive device, Ms. Hoskins

> mentioned shopping trips which necessarily involved considerable
> standing and walking (Exhibit 5F, p.2). At the hearing, Ms. Hopkins
> said that her psychological difficulties were greater than the physical
> ones when she was employed.

[R. 21, 22]. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372.

Plaintiff next challenges the ALJ's credibility determination in his statement that plaintiff's treating physician placed no limitations on her that would preclude her from performing light work as described in his RFC. [Dkt. # 17 at 4]. Plaintiff is invoking the legal maxim that "the absence of evidence is not evidence." See e.g. Harjo v. Astrue, 336 Fed. Appx. 810, 813 (10th Cir. 2009) (unpublished)[3] (citing Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993)). The Tenth Circuit recently discounted this notion as it applies to treatment notes. In Harjo, the court noted that credibility determinations are peculiarly the province of the finder of fact. 336 Fed. Appx. at 813. It is the ALJ who is charged with making credibility determinations based on the record as a whole. As long as his decision is not based solely, or even primarily, on a claimant's failure to produce a physician's recommendation that she be restricted from working, there is no error in his reliance, in part, on such a finding. Id. As shown above, the ALJ cited substantial evidence in the record to support his credibility determination. He did not rely solely on plaintiff's failure to produce a statement from a treating source to establish her inability to work.

Plaintiff also faults the ALJ in failing to acknowledge that she was considered 80 percent

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

11

disabled on her worker's compensation claim. [Dkt. # 17 at 5].  The Court finds no merit in this contention because disability for worker's compensation purposes is not dispositive of a disability analysis under the Social Security Act.  See Roulston v. Shalala, 46 F.3d 1152 (10th Cir. 1995) (unpublished).

Plaintiff claims the ALJ improperly discredited her mental impairments by finding she had not actively sought mental health counseling, even though her attorney advised him during the hearing that she had started mental health counseling at Grand Lake Mental Health Center.  In his opinion, the ALJ found that plaintiff's counsel had not furnished those records within the time allotted..  He also found that the records would not be informative as to the status of her mental health because they were outside the requisite 12 month period covering his evaluation.  [R. 22].  On review, the Appeals Council accepted and considered her records from Grand Lake Mental Health Center and included them in the record.  Plaintiff does not cite to any evidence in those records to support her claim that her mental impairment disables her from work.  To the contrary, as pointed out by the Appeals Council, these records were "new evidence which showed improvement in [plaintiff's] depression" as a result of the adjustments her physician made in her medications. [R. 7].

Finally, the plaintiff advances various arguments to support the credibility of her testimony, including:  (1) a global assessment of function (GAF) score of 41 at Grand Lake Mental Health Center, (2) medications and their side effects, (3) minimal activities of daily living (4) social inabilities or limitations, (5) hypervigilance and hallucinations, (6) memory problems, (7) swelling, tenderness, or crepitus, decreased range of motion in her knee and decreased joint space on x-ray, (8) cortisone injections for pain, (9) addiction to narcotics and Xanax, (9) motivation to work, (10)

brace, rubs, ice, heat and elevation of her leg, and (11) severity and frequency of her pain. [Dkt. # 17 at 5-10].[4] The ALJ accepted the physical RFC assessment of agency physician Dr. Penny Aber [R. 186-193] and Dr. Matt West [R. 165-171]. Both their assessments are consistent with the physical RFC assessment by agency physician Thurma Fiegel, M.D. and are in sharp contrast to plaintiff's subjective testimony and the GAF score assigned by the Grand Lake Mental Health Center. Dr. Fiegel opined:

---

[4] Plaintiff has raised other claims in her brief which are outside the scope of the two issues she raised on appeal. These claims include: the ALJ rejected the treating physician's opinion, without assigning some weight to the opinion and evaluating it with the proper factors; the Appeals Council improperly denigrated the importance of the mental health records by finding they were not from an acceptable medical source; Appeals Council failed to apply the proper standard in evaluating non-acceptable medical source materials; Appeals Council decision was based on speculation; Appeals Council erred in finding the supplemental evidence was outside the time period under review by the ALJ; Appeal Council erred in failing to contact the treating team at Grand Lake Mental Health Center to inquire about any doubts they voiced; and the ALJ ignored that her ability to perform household chores is not substantial gainful activity. [Dkt. # 17 at 5-9].

Plaintiff's brief is not in compliance with the Scheduling Order entered in this case. The Scheduling Order provides in Section 2.A.

(2) **Section II – Errors on Appeal**: Plaintiff must list and number each specific error the Commissioner or ALJ made in concluding that Plaintiff was not disabled. This section should <u>not</u> contain a discussion of each error.

(3) **Section III – Discussion of Errors on Appeal:** Plaintiff's brief should contain a separate sub-section for each error listed in Section II of Plaintiff's brief. Plaintiff must discuss each error which Plaintiff listed in Section II in detail, and explain why the error requires a reversal or a remand of the Commissioner's decision. Plaintiff should provide specific references to the record for each error. Citations to cases, statutes, regulations (C.F.R.), and applicable Social Security Rulings (SSR) are appropriate.

Social Security Scheduling Order CV-08a (2/07) (emphasis in text).

With respect to the issues identified in this footnote, Plaintiff failed, in all respects, to comply with the requirements of the Scheduling Order. Thus, those issues are outside the scope of the two issues raised on appeal and will not be considered by the Court.

> Her right knee has full range of motion, no swelling. Ligaments are stable. No patellar crepituss or grind. No bruising or gross deformity. . . . No clicks or pops. Normal walking gait with out limp. Normal speed, stability and safety without use of an assistance device. Did not seem in any discomfort during normal walking. Tandem gait is unremarkable. Able to heel and toe walk. Romber's normal. Strength and senation (sic) are intact and equal bilaterally. . . X-ray right knee: some mild joint space narrowing, but no bone spurs. Assessment: DJD, hypertension.

[R. 199-00]. The ALJ gave specific reasons for his credibility determination and he relied on objective medical evidence to support his determination. Aside from plaintiff's testimony, her statements in treatment notes, and medication history, there was minimal objective evidence to support her credibility. The ALJ noted this fact in his decision, "The claimant must prove the existence of a disabling impairment by objective medical evidence. The claimant cannot prove the existence of a disabling impairment solely by unverified testimony." [R. 22].

The Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. at 42 (citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.")).[5] Plaintiff contends that GAF scores between 41 and 50 represent serious limitations, one of which is inability to hold a job. A score between 41 and 50 indicates "[s]erious symptoms . . .OR any serious impairment in social, or occupational functioning ." Id. Manual of mental Disorders at 34. However, the Tenth Circuit has held that a GAF score is not outcome determinative:

---

[5] A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

14

> [A] GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job. Thus, standing alone, the GAF score does not evidence an impairment seriously interfering with claimant's ability to work. While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.

Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003) (unpublished) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235 at 241). There is no indication in the medical records from the Grand Lake Mental Health Center that plaintiff could not work. Therefore the GAF score of 41, standing alone, was not "significantly probative" evidence in opposition of the ALJ's determination of credibility. See id.

Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). The Court finds that the ALJ's credibility determination is closely linked to substantial evidence which establishes that plaintiff's was not entirely credible. Thus the Court finds that the ALJ's determination of credibility was in proper form.

## Conclusion

Based on the foregoing, the Court AFFIRMS the decision of the Commission denying disability benefits to plaintiff.

IT IS SO ORDERED this 22nd day of February, 2010.

T. Lane Wilson
United States Magistrate Judge